MASTER AND WARDENS *v.* SHIP M. HAWES.

---

## L. C. MORRIS, Syndic, *v.* WIDOW H. E. WILLIAMS.

Under the act of March 29th, 1826, and the act of February 20th, 1817, the court is authorized to appoint the sheriff syndic of an insolvent succession, where no one duly qualified has applied for the administration; and his official sureties are bound for his acts as syndic.

To enable creditors to annul a judgment obtained by the wife against the husband, they must allege and prove they were creditors at the time the judgment was rendered, and that it was obtained by collusion in order to defraud them of their recourse upon the husband's property.

Where the husband has paid debts of the wife separated in property from him, and it appears from the evidence he had no means, while she possessed a large and productive property, it will be presumed that he paid her debts out of her funds, and not out of his own.

APPEAL from the District Court of East Baton Rouge, *Burk*, J. *G. S. Lacey* and *D. D. Avery*, for plaintiff. *J. M. Elam* and *T. G. Morgan*, for defendant. The judgment of the court was pronounced by

PRESTON, J. On the 30th of June, 1842, *Mrs. Henrietta E. Williams* obtained a judgment of separation of property from her husband, *John C. Williams*, and for $20,100, as the amount of her paraphernal rights and costs; and on the 1st of October, 1842, caused his plantation, called Arlington, in the parish of East Baton Rouge, with his slaves, to be sold by the sheriff of the parish, and purchased the same for $68,290. There were apparently mortgages on the property to the amount of $67,000, and the sheriff left the whole amount of

MORRIS
v.
WILLIAMS.

the price of the adjudication in her hands, to satisfy the same and her judgment to the extent of the balance.

*John C. Williams* died in 1846, and she renounced his succession. He left, however, benificiary heirs; but they did not administer upon his estate. In 1847, a meeting of the creditors was called to appoint syndics to administer it as an insolvent succession. The widow, and another creditor whom she has since paid, alone appeared and presented their claims, but did not appoint a syndic. On the return of the proceedings to that effect, the court by order appointed the sheriff syndic.

On 29th of March, 1849, he instituted the present suit against *Mrs. Williams*: 1st. To set aside the sheriff's sale to her of her husband's property, and to recover the plantation and slaves, and their revenues since 1842; alleging that the sale was illegal on various grounds. 2d. To annul the judgment in favor of *Mrs. Williams* against her husband for informalities, and because it was rendered for more than was due to her, alleging that in fact nothing was due to her. 3d. He alleges, in case these judgments and sale should be maintained, that the mortgages, for which the price of the adjudication was left in her hands, were fictitious; that nothing was really due upon them; and that she had not paid and never would be compelled to pay anything on account of them.

Wherefore he concludes, that he is entitled to recover the property or the amount of the adjudication, with interest from its date, for the benefit of the succession of *Williams;* and prays judgment accordingly.

The defendant excepted to the suit, that the act of 1826 gave the court no authority to appoint the sheriff the syndic of an insolvent succession; and that its administration was otherwise provided for by the Civil Code. The 7th section of the act directs a meeting of the creditors, to appoint syndics when no one will administer upon an insolvent succession; and further, that the proceedings shall in all respects conform to the proceedings prescribed by that act and the act of 1817, for the administration of property surrendered by an insolvent debtor to his creditors. The 29th section of the act of 1817 expressly provides, that in case the meeting of the creditors fail to appoint a syndic, the court shall authorize the sheriff to perform the functions of syndic. It is said, a large amount of funds may come into his hands, for which he has given no security. We think his official sureties would be bound for any defalcation, because the money would come into his hands in his official capacity. The creditors, too, might have prevented the danger of loss, by administering themselves. Besides, the act of 1837 requires the deposit of the money in bank. The exception was, therefore, properly overruled.

In the progress of his suit, the plaintiff abandoned his claim, to set aside the adjudication and sale of the plantation and slaves made by the sheriff to *Mrs. Williams.* But he still insists, that the creditors of *Williams* have a right to annul the judgment against him in favor of his wife, because nothing was due to her, and of course to reduce it to the amount actually due to her.

They have that right; but in order to annul the judgment it is incumbent on them to allege and prove, that they were creditors at the time of the rendition of the judgment; and further, that it was obtained by collusion, in order to defraud them of their recourse upon the husband's property. It was so expressly held by the late Supreme Court, in the case of *Brossac* v. *Ducross,* 4 R. R. 336, and in other cases, in which decision we fully concur.

In the present case there are no allegations of fraud and collusion in obtaining the judgment of separation, or as to the amount, or that the claims of the

creditors of *Williams'* succession existed before its rendition. Some judgments were offered in evidence, which probably grew out of transactions with *Williams* previous to the judgment in favor of his wife. But, for the want of allegations in the petition to justify their admission, they were rejected by the court. With proper and timely allegations, the defendant might possibly have shown, that, like the judgment in favor of *Waterman* and *Wood*, they had been satisfied. They were, therefore, properly rejected as evidence; and we cannot inquire into the validity of the judgment rendered in 1842, in favor of the defendant, against her husband.

The plaintiff next alleges, that the mortgages upon the plantation and slaves, for which the price of the adjudication to her was left in the hands of the defendant, were but nominal and fictitious, and were never paid by her.

He has proved beyond a doubt, that a large mortgage, for $25,000, in favor of *James McCalop*, was given as collateral security for endorsements; that he was never subjected to liability on account of his endorsements; and that the mortgage was cancelled without anything ever having been paid to him by the defendant. The plaintiff has proved, further, that a large mortgage, in favor of *Lee Hardesty*, was somewhat of the same character, and that there was due upon it but $1264 at the date of the adjudication of the property to *Mrs. Williams*.

Calculating the principal, interest and costs of all conventional and judicial mortgages upon the plantation and slaves, including the judgment in favor of the defendant, the aggregate actually due at that date, of the adjudication of the property to her, and which has since been paid or still incumbers the property, amounted to about $51,290, and must have left a surplus of the price in her hands amounting to about $15,736 beyond what was necessary to extinguish her own claim and all mortgages anterior to the adjudication.

The plaintiff contends, that the judgments anterior to that of the defendant were paid by *Williams* himself, who had ample means; and that the wife should not be credited with them. He proves, that the payments made during the life of *Williams*, were, in point of fact, received from him. Nevertheless, as the debts were assumed by *Mrs. Williams*, we have no doubt that the payments were made with her means, through the instrumentality of her husband.

The evidence in the record shows, that the ample means of the husband referred to were an unprofitable saw-mill in the State of Mississippi, wild lands in Arkansas and Texas, and elsewhere, in large quantities; such property raises the presumption, rather, that he exhausted and wasted his means in wild and ruinous speculations, than that he applied them to the payment of his wife's debts, who had a productive plantation and slaves mortgaged to her creditors.

We would have yielded much more readily to the supposition, if it had been alleged as matter of defence, that he took out of her annual crops the surplus of the price of adjudication after paying the real incumbrances, and used it in these wild speculations, instead of paying his own debts, for which his widow is now sued. As, however, she has neither alleged nor proved that she paid over the surplus to her husband, it is due to his creditors, and with legal interest from the day of the adjudication of the property to her, because it produced fruits and revenues.

The beneficiary heirs have protested against the prosecution ,of this suit for their benefit. It is strictly, therefore, a suit by a syndic for creditors; and it is the duty of the court to notice the fact that the creditors have not appeared personally. But one appeared in pursurnce of the public call for a meeting of creditors. He claimed a hundred dollars on a note which *Mrs. Williams* now

holds. It was supposed the suit was prosecuted for the benefit of *Waterman* and *Wood ;* but it appears that their judgment was satisfied by *Williams* himself, in 1844. In rendering judgment against the defendant for a very large sum, we provide against useless expense and incumbrances on her property.

It is, therefore, ordered that the judgment of the district court be reversed; and it is adjudged and decreed, that the plaintiff, in his capacity of sheriff and syndic of the insolvent succession of *John C. Williams,* do recover from the defendant, *Henrietta E. Raoul,* the sum of $15,736, with legal interest from the first day of October, 1842, and with costs in both courts. It is further decreed, that this judgment shall not be recorded or executed until a call upon the creditors of the succession of *John C. Williams,* to make their claims known, as pointed out in article 1126 of the Civil Code; nor until a tableau of distribution is filed and homologated, as directed by article 1169 of the Code. The homologation and order to make payments, to be obtained after legal notice of ten days to *Mrs. Williams* and the beneficiary heirs of her husband, to make opposition to the same if they choose. Execution may then issue for the amount of this judgment in this case, *but to be satisfied by payment of the debts and costs ordered to be paid by the homologation of the tableau of distribution.*