## M. GREENWOOD & Co. *v.* COOPER et al.

After the carrier has receipted for the goods, they are at his risk, as much as if they were aboard the vessel.

It is proper to give notice of the sale by auction, of damaged goods, yet the failure to do so, does not preclude a party from recovery, when proof of damage is corroborated by other independent testimony.

The principal object for which the intervention of the Port Wardens seems to be requisite, is to determine whether goods are damaged to such an extent, as to render a sale necessary.

APPEAL from the Fifth District Court of New Orleans, *Augustin,* J.
*T. J. Semmes,* for plaintiffs and appellants : cited, *Rathbone* v. *Neal,* 4 An. 566, 567.

*Cohen,* for defendants.:
Plaintiffs' counsel cites 4 An. 566–7, in reply to so much of the judgment of the District Court as decides against plaintiffs, because they sold the damaged goods at public auction, without notifying the captain of the ship or her agents, that plaintiffs intended so to do.

But *Rathbone* v. *Neal,* does not apply to damaged goods, but to delay in delivery of goods.

The brief errs in stating that a sale was recommended by the Port Wardens, and that Captain *Swain* was a Port Warden.

*Winthrop & Josephs,* on the same side.

LEA, J. The plaintiffs in this case claim the sum of $4,141 for damages on goods consigned them by the ship St. Peter, and delivered in bad order.

The defendants aver that the merchandise received by them, was delivered " in the same order and condition in which it was received," and deny that the goods have sustained any loss or damage in consequence of their neglect.

It is somewhat questionable, whether under such a defence as this, evidence could be offered to prove a cause of damage, occurring after the receipt of the merchandise by the carrier; for the defence is, that it was delivered " in the same condition in which it was received." It is not urged in the pleadings, that the goods were damaged after the defendants had received them, by any overwhelming accident, which human forsight and prudence could not avert, or guard against; but it is shown by some of the witnesses, that after the boxes of merchandise had been received by the ship, and before all of them had been taken on board, there arose a violent storm, " the like of which had never been known to the oldest inhabitant of Boston," causing the tide to rise to an unusual height, so as to flood the lower floor of the warehouse in which the boxes had been placed for protection. But the same witness who testifies to the unusual violence of the storm, declares, with great confidence, that it did no damage to the goods, as they had been raised on boxes or skids, so as to be out of the reach of the flood.

If this was the true state of the case, it is not perceived why any reference whatever was made to the storm. The receipt of the bill of lading, acknowledging the goods to have been received in good order, has not been contradicted ; on the contrary, it is evident that the damage was caused by salt water, and even assuming (what the defendants' witness denies) that it occurred during the overflow, it is not satisfactorily shown that such injury might not have been prevented by due diligence. After the defendants had receipted for the merchandise, it was at their risk as much as if it had been on board of the vessel. If it was brought to them faster than they could conveniently dispose of it, they were not bound to receive it.

Objection has been made, that the defendants·were not notified of the intended sale of the damaged goods. It certainly would have been proper to give such notice, but the failure to give it, does not, in our opinion, preclude the plaintiffs from a recovery, when the proof of damage is corroborated by other independent testimony. The goods were sold at public auction by a regularly licensed auctioneer, and it is not pretended that they were sold at a sacrifice. There has been no imputation of bad faith in the proceeding, and no intimation that if the defendants had been present at the sale, they could have suggested a better means of arriving at the true measure of the damage sustained.

Moreover, the proof of damage does not rest exclusively upon the *proces verbal* of sales made out by the auctioneer. The experts who examined the merchandise, very minutely and conclusively establish its perishable condition, and the absolute necessity for a sale at auction. They moreover show that the extent of damage actually sustained, when taken in connection with its exposure to absolute destruction, was such as not to justify any expectation of a higher price than it actually brought. The principal object for which the intervention of Port Wardens seems to be considered requisite, is to determine when there exists a necessity for a sale, but when that fact is once established, as in the case at bar, the actual sale is always made at public auction. Now, it was the right of either of the parties to have ·insisted upon an auction sale, and had the whole matter been referred to the Port Wardens, they could have done no more than sell at auction. We consider, therefore, that the evidence sufficiently shows, that the defendants have sustained no damage from the want of notice complained of. See *Rathbone* v. *Neal*, 4 An. 567 ; also, 23 Wendell's Reports, 306, *Bowman* v. *Teal*.

It is ordered, that the judgment appealed from be reversed ; and that the plaintiffs, *Moses Greenwood & Co.* do have and recover of the defendants, *Stephen Davenport, A. Allen, J. Larrabee*, and *Cyrus Cooper, in solido*, the sum of $4,141 19, with interest thereon, at the rate of five per cent. per annum, from the 21st June, 1851, till paid, and costs of suit, with privilege for the payment of the same on the ship St. Peter.