On Rehearing.
LAND, J.
[1] Our original opinion was based on the cases of Henderson v. Ship Maid of Orleans, 12 La. Ann. 352, and Smith v. Barque W. H. Wall, 18 La. Ann. 724, in which the court said: ■
“The measure of damage is the difference between the value of the goods in their damaged state, and their value at the port of destination had they been delivered in good order. * * * That difference in value should have been ascertained by a public sale to the highest bidder.”
The doctrine that damage to goods, while in transit on ships, should be ascertained by public sale, was peculiar to this stdte. The author of Oyc. says:
“Outside of Louisiana there is no general requirement that the owner shall proceed by public sale with damaged goods to have the amount of his,damage determined, but he may prove it by any competent manner.” 6 Oyc. 533, note 96.
“Generally speaking, what property brings at a public sale is a fair test of its value, and in some instances it may be the only available test. * * * It is only one of the means by which the value of the property and the loss may be ascertained.” 4 R. C. L. § 468, p. 1000.
In Rathbone v. Neal, 4 La. Ann. 563, 50 Am. Dec. 579, the plaintiff sued for damages for unreasonable delay in the delivery of merchandise, and the court said:
“The ascertainment of the loss is a matter resting upon the ordinary rules of evidence. Bowman v. Teal, 23 Wend. [N. Y.] 306 [35 Am. Dec. 562].”
The Smith Oase, 18 La. Ann. 724, is based on the Henderson Oase, 12 La. Ann. 352, and both suits were for the value of the entire shipment, as in case of abandonment. The evidence showed partial damage. Hence there was no total loss, and no right of recovery. In the Henderson Oase, the court said that the difference between sound and *206 damaged value should have been ascertained by a public sale to tbe highest bidder, citing Greenwood v. Cooper, 10 La. Ann. 796, in which case a reference is made to the duties of port wardens as to the sale of damaged goods at public auction. In that case the damaged goods had been sold at public auction by a licensed auctioneer without the intervention of the port wardens, and the court affirmed the sale on evidence that the goods had brought a fair value, saying that the port wardens “could have done no more than sell at auction.” In Elkin & Co. v. N. O. S. S. Co., 14 La. Ann. 647, the court held that, where goods are damaged to such an extent as to be valueless and unsalable, a sale at public auction will not be required, and referred to Greenwood v. Cooper, supra, as holding that:
“Either party had the right to require a sale by auction; and, upon an application by defendants, such an order might have been made.”
The office of master and wardens of the Port of New Orleans was organized by the act of March 21, 1805 (2 Martin’s Dig. 390), which provided that it should solely belong to said officers or any two of them, to order and direct the sale of damaged goods by public auction, giving notice of such public sale at least two days before, in French and English and in two newspapers published in this city, and at least two of said wardens shall be present at such public sale, etc. In 1851, this provision was construed by the Supreme Court as follows:
“We take this to mean that they have the sole right to order and direct the sale of damaged goods by public auction in the case provided in the section; that is, when called upon by the person commanding any ship or vessel arriving from sea.”
See Master and Wardens v. Ship M. Hawes, 6 La. Ann. 391. See, also, Acts of 1855, No. 343. Revised Statutes of 1870, §§ 2223 and 2230, give master and wardens the sole power to order sale of damaged goods at public auction. By Act No. 3 of the Extra Session of 1877, the number of wardens was reduced to two, and their duties .and functions greatly curtailed, and in 1896 the office was merged into the board of commissioners -of the Port of New Orleans.
In an early case it was held that the port wardens were by law judges of the necessity which requires damaged goods to be sold at public auction. Oakey v. Russell, 6 Mart. (N. S.) 61. In the Greenwood Case, 10 La. Ann. 797, the court said:
“The principal object for which the intervention of port wardens seems to be considered requisite is to determine when there exists a necessity for a sale, but when that fact is once established, as in the case at bar, the actual sale is always made at public auction. Now, it was the right of either party to have insisted upon an auction sale, and, had the whole matter been referred to the port wardens, they could have done no more than sell at auction. We consider therefore that the evidence sufficiently shows, that the defendants have received no damage from the want of notice complained of. See Rathbone v. Neal, 4 La. Ann. 567 [50 Am. Dec. 579].”
In the Greenwood Case, the port wardens had not been consulted as to the necessity, of the sale, and the goods had been sold at public auction without notice to the defendants. In fact, the only requirement of the act of 1805 which had been complied with was a sale at public auction. The Elkin Company Case, supra, makes it plain that either party had the right to apply to the port wardens for an order for the sale of the damaged goods at public auction.
The foregoing review of the statutes and jurisprudence makes it evident that the courts of this state held that a sale of damaged goods should always be made at public auction, because such sale was required by the provisions of act of 1805, cited supra; a purely local law applicable only to the port of the city of New Orleans, and to cargoes imported in ships and .other vessels.
In the Rathbone Case, supra, the goods had not been damaged, but had depreciated in value, and the court, following the general rule of law, held that the damage might be proved by any competent evidence.
*208 [2] Our conclusion is that the sale at public auction of the damaged cotton seed in question was not required by any law of this state, or by any rule of its jurisprudence. Such a requirement would be utterly impracticable, if applied to damaged goods delivered at railroad stations, where there are no auction exchanges, or auctioneers, or bidders. In the case at bar, the heated and rotting cotton seed were examined by an agent of the defendant company who made no suggestion whatever as to the disposition of the seed or any opposition to their use by the plaintiff. The plaintiffs’ agent removed the seed from the heated car, and, after culling out portions that had become “caked” and worthless, used the remainder in the manufacture of fertilizer and soapstock. No more favorable disposition of the seed has been suggested. An expert on cotton seed testified that the carload of seed was damaged from 40 per cent, to 50 per cent.; and another witness testified to the same effect. The seed cost the plaintiff $22 per ton, at a steam gin in the same parish, and this was the usual price which plaintiff was paying for good seed. The testimony of plaintiffs’ witnesses as to the quantum of damage was not contradicted on the trial of the case. Defendant offered no evidence on the subject. The district court gave judgment for plaintiff for $275 based on the lowest estimate of 40 per cent, of damage. The court of appeal increased the judgment by the sum of $32.72, being the same proiiortion of loss on the freight bill of $81.81. '
We think that the court of appeal erred in allowing this additional item for the reasons: First, that it is not claimed in plaintiffs’ petition; and, secondly, that if the railroad makes good the damage, it will have earned the freight.
See Hutchinson, Carriers (3d Ed.) _ §§ 799, 800; Am. & Eng. Enc. Law, pp. 373, 381.
It is therefore ordered that the judgment of the court of appeal in this case be amended by-reducing the amount awarded to $275.-84, and that as thus amended said judgment be affirmed; costs in this court to be paid by the plaintiff.